In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1311

JOSEPH A. SOTTORIVA,

*Plaintiff-Appellant,*

*v.*

ROCCO J. CLAPS, Director of the Illinois
Department of Human Rights, and
DANIEL W. HYNES, Comptroller of the
State of Illinois,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:06-cv-03118—**Jeanne E. Scott**, *Judge.*

ARGUED OCTOBER 7, 2009—DECIDED AUGUST 17, 2010

Before RIPPLE, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.* Joseph A. Sottoriva, an em-
ployee of the Illinois Department of Human Rights (the
"Department"), filed a three-count complaint against
Rocco Claps, the Director of the Department, and Daniel
Hynes, the Comptroller of the State of Illinois. Sottoriva

alleged that Claps and Hynes violated his due-process rights under the Fourteenth Amendment by withholding portions of his salary without an adequate hearing. Sottoriva sought injunctive relief and money damages. Sottoriva also accused Claps of violating Illinois' State Finance Act. On summary judgment, Sottoriva obtained limited injunctive relief on his due-process claim. Sottoriva's state-law claim did not survive summary judgment because it was jurisdictionally barred by the Eleventh Amendment, and he later withdrew his claim for money damages. Sottoriva then filed a petition for attorney's fees and costs pursuant to 42 U.S.C. § 1988. Accounting for Sottoriva's partial success, the district court reduced his fee award by 67%.[1] Sottoriva now appeals on the sole ground that this reduction in fees constituted an abuse of discretion. We conclude that the district court provided insufficient reasoning in support of its judgment; therefore, we vacate the order of the district court and remand for further consideration.

## I. Background

Sottoriva began his employment with the Illinois Department of Human Rights in 1996. He was also a member of the United States Army Reserve, and along with many other reservists, was mobilized to active

---

[1] The district court denied Sottoriva's request for costs because that request was not made in conformity with Local Rule 54.1(B). C.D. ILL. L.R. 54.1(B). Sottoriva does not appeal this aspect of the district court's ruling.

duty in the run-up to the Iraq War. From January 17, 2003, to August 17, 2004, Sottoriva was on leave from the Department as he discharged his military obligation, yet he remained on the Department's payroll during this entire period. On February 7, 2003, Illinois Governor Rod Blagojevich issued Executive Order 2003-6, which was designed to ensure no full-time employee of the State of Illinois would be penalized financially as a result of being called up to active duty in response to the Iraq War. This directive provided that any such employee would continue to receive his regular compensation as a State employee, plus benefits, but minus the base pay received for military service. Thus, the Department had a continuing financial obligation to Sottoriva provided that his military salary did not exceed his preexisting compensation package from the State.

The Department had some difficulty in comparing Sottoriva's military pay with the State pay he would have earned during the same time period; the Army and Illinois used different pay periods and there were additional complications in accounting for benefits (Sottoriva elected to keep his State health plan) and taxes. As a result, the Department was unable to properly calculate how much compensation, if any, Sottoriva was entitled to on top of his military salary, and through no apparent fault of his own, Sottoriva was consistently overpaid throughout his tenure on active duty. Both Sottoriva and the Department recognized this "glitch" early on but were unable to resolve the problem.

In April 2004, as his tour of duty was nearing an end, Sottoriva received an email from the Department informing him that if he returned to work by July 1, he would owe $17,982.47 in excess payments. Sottoriva returned to work on August 25, and shortly thereafter he filed a union grievance pertaining to his overpayment. Sottoriva sought (1) a written accounting of what he was supposedly overpaid; (2) a waiver of the alleged overpayment of $17,982.47 based on the Department's administrative error; and (3) amended and accurate W-2 Forms for 2003 and 2004 to account for the fact that he paid taxes on income he was now being asked to return.

On May 23, 2005, the union and the Department resolved the grievance prior to arbitration by agreeing that Sottoriva needed to repay the overpayment of $17,982.47 to the Department. Sottoriva was not at this meeting and apparently had no advance warning that the meeting was to take place. The union and the Department also agreed to develop a payment plan over the summer. On August 30, 2005, during negotiations over the repayment plan, the Department informed Sottoriva's union representative that the Department had now calculated that Sottoriva in fact owed $24,105.03 in excess pay.[2] At a September 1 meeting, the Department presented Sottoriva with three optional repayment schedules and one involuntary withholding proposal. Sottoriva, through his counsel, disputed the amount he was now being asked to repay and demanded to inspect any documentation supporting this new number.

---

[2] This number was later amended to $23,988.00.

The Department sent copies of Sottoriva's pay records to the union representative, but it declined all requests for a further hearing that would enable Sottoriva to dispute the new sum.

Sottoriva did not select any of the three optional repayment plans, so on September 15 Claps, the Director of the Department, submitted an "Involuntary Withholding Request" to Hynes, the State Comptroller. The request sought to withhold $24,105.03 from Sottoriva over the course of many pay periods. On September 26 Hynes sent Sottoriva notice of this request and informed him that the withholding would begin immediately. This notice also informed Sottoriva of his right to file a formal protest of the withholding. Sottoriva filed such a protest, and on February 17, 2006, the Office of the Comptroller sent the Department a letter stating that it would no longer withhold the requested funds from Sottoriva's paycheck due to a "concern[] about the adequacy of the Department's proceedings held to establish the amount of debt owed by Mr. Sottoriva."

Beginning in May, the Department began withholding money from Sottoriva directly by simply manipulating Sottoriva's base pay rate. Sottoriva was informed of this decision before it happened, but the Comptroller had no internal mechanisms for challenging the legitimacy of base pay received (as opposed to withholdings). Sottoriva thereafter filed his three-count complaint against Claps and Hynes in federal court.

In Count I Sottoriva alleged that portions of his salary were being withheld without due process of law and

sought an injunction prohibiting the defendants from withholding *any* of his wages. Sottoriva contended, at least implicitly, that (a) the grievance system provided through his union did not satisfy due-process requirements, and (b) the defendants violated his due-process rights by failing to grant any hearing to challenge the revised figure of $24,105.03. In Count II Sottoriva sought monetary damages from Claps for the losses that Sottoriva claimed to have suffered as a result of the due-process violation (tax losses in particular). In Count III Sottoriva alleged that Claps had violated Illinois' State Finance Act, 30 ILL. COMP. STAT. 105/9.06, and should thus be removed from office.

Claps won summary judgment on Count III because it was jurisdictionally barred by the Eleventh Amendment. Count I—whether there was a due-process violation—was the primary focus of the district court's attention. Both parties moved for summary judgment on this count, and both parties partially prevailed. 2008 WL 821870 (C.D. Ill. Mar. 26, 2008). The district court held that Sottoriva had received sufficient process through the union grievance procedure in the calculation of the $17,982.47 figure and that the Department could continue to withhold income from Sottoriva's paycheck to satisfy this amount. However, the district court also held that the Department was precluded from withholding any amount in excess of $17,982.47 without first providing Sottoriva with a meaningful hearing at which he could challenge this new sum. Sottoriva withdrew Count II on the day trial was to begin.

Sottoriva then moved for attorney's fees pursuant to 42 U.S.C. § 1988. The district court's opinion on this issue reflects considerable effort determining reasonable hourly rates for the partner, associate, and law clerk who worked on the case. The court also reviewed all of the billing entries in order to verify that they were legitimate and reasonable. After arriving at a "lodestar" figure of $42,770.50 (legitimate hours billed times reasonable hourly rate), the district court then considered the extent to which this number adequately reflected the level of success Sottoriva achieved in relation to the aims of his original complaint. The district court's analysis is essentially contained in the following sentence: "Considering all of the claims originally filed by Plaintiff and the evidence submitted in connection with dispositive motions, the Court finds that the fee award should be reduced by sixty-seven percent to reflect Plaintiff's limited degree of success." 2009 WL 211170, at *5 (C.D. Ill. Jan. 28, 2009). Sottoriva was awarded $14,114.27, and he now appeals, seeking the full lodestar amount of $42,770.50.

## II. Discussion

Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in suits brought pursuant to 42 U.S.C. § 1983.[3] This court

---

[3] "'[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant

(continued...)

reviews an award of attorney's fees under § 1988 for an abuse of discretion. *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 822 (7th Cir. 2009). In considering the reasonableness of an attorney's fees award, we are mindful of the Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In light of this concern, as well as the fact that determining what qualifies as a "reasonable" use of a lawyer's time is a highly contextual and fact-specific enterprise, "we have granted wide latitude to district courts in setting awards of attorney's fees, for 'neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate scrutiny.'" *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003) (quoting *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988)). But "wide latitude" is not unlimited latitude, and the district court still bears the responsibility of justifying its conclusions.

Justice Powell's opinion for the Court in *Hensley* articulates the framework for calculating (and reviewing) reasonable attorney's fees under § 1988. As the opinion explained, "The most useful starting point for deter-

---

[3] (...continued)

issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). Under this generous formulation, Sottoriva is indisputably a prevailing party in this case.

mining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Neither party alleges that the district court improperly computed the lodestar figure. However:

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.

*Id.* at 434 (internal citation omitted). Where, as here, a plaintiff prevails on only some of his interrelated claims, *Hensley* instructs that the "district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. Applying *Hensley*, the critical inquiry in this case is whether the district court's fee award is reasonable in relation to the results Sottoriva actually obtained. *Id.* at 440. This requires a two-part analysis. First we must consider whether a downward adjustment of Sottoriva's lodestar recovery is appropriate. If such a reduction is proper, we then evaluate whether the amount of the reduction (in this case 67%) is reasonable.

The district court was correct to conclude that Sottoriva's ultimate success was limited to such an

extent that a downward adjustment of the attorney's fees was warranted. To recap, Sottoriva essentially pursued two different theories of relief in his complaint: the state-law claim against Claps and the due-process claims against Claps and Hynes. The due-process claims (Counts I and II) were undeniably the central focus of this litigation, and Sottoriva achieved a meaningful legal victory in obtaining an injunction preventing the defendants from withholding any amount in excess of $17,982.47 from his paycheck without a further due-process hearing. When viewed solely in terms of identifying the due-process violation, however, Sottoriva's success was far from complete. Sottoriva's complaint sought an injunction preventing the defendants from withholding *any* wages from his paycheck before a further due-process hearing could be held. Evidently, this request was predicated on Sottoriva's belief that even the union grievance procedures—pursuant to which the parties agreed to an initial withholding amount of $17,982.47—did not constitute sufficient process. In granting summary judgment for the defendants to the extent that they could continue to withhold up to $17,982.47 from Sottoriva's salary, the district court unequivocally rejected this aspect of Sottoriva's due-process claim.

To be sure, a plaintiff need not prevail on every claim or legal theory to receive fully compensatory attorney's fees. *Hensley*, 461 U.S. at 435. In this instance, however, Sottoriva's failed effort to challenge the procedures through which the $17,982.47 debt was calculated was

both sufficiently substantial and discrete that it cannot be ignored in considering the extent of Sottoriva's overall success. Viewed in this light, it was entirely proper for the district court to conclude that Sottoriva achieved only "partial" success and that the lodestar figure should thus be reduced to reflect this fact. *Id.* at 436.

Next, we consider whether the district court reduced the lodestar figure by a reasonable amount. Precision is impossible in such calculations, and the district court is entitled to considerable discretion in arriving at an award that it deems reasonable. Nevertheless, the district court must justify its decision. This explanation may be "concise," *id.* at 437, but it must still be an *explanation*—that is, a rendering of reasons in support of a judgment—rather than a mere conclusory statement. In this case, while the district court adequately justified its decision not to award Sottoriva the full lodestar figure, it did not explain how it settled on a 67% reduction. "[L]ack of explanation is often sufficient in itself to constitute an abuse of discretion where the reasons for a decision left unexplained are not apparent from the record." *Prod. & Maint. Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992). We are especially reluctant to affirm the district court's summary holding given our concern that the 67% reduction may have been chosen to reflect the fact that Sottoriva only prevailed on one of three claims in the litigation. In other words, this resembles simple "claim counting," and *Hensley* explicitly counseled against ap-

plying such "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." 461 U.S. at 435 n.11 (quotation marks omitted).[4]

On remand the district court should consider and explain the proper relationship between Sottoriva's actual victory and the lodestar fee. *Id.* at 436. In pursuing this inquiry, the district court may want to consider the amount of attorney's fees that would have been reasonable had Sottoriva only sought an injunction prohibiting the Department from withholding more than $17,982.47 from his paycheck without first providing a further due-process hearing. Finally, we pass no judgment on whether a 67% reduction in the lodestar figure could be appropriate in this case; we hold only that the district court's ruling was not sufficiently explained, not that the ultimate outcome was necessarily an abuse of discretion.

---

[4] The Court went on to explain:

> Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*Hensley*, 461 U.S. at 435 n.11.

For the foregoing reasons, the district court's award of attorney's fees is VACATED, and the case is REMANDED for proceedings consistent with this opinion.