In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2476

WORLD OUTREACH CONFERENCE
CENTER, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 06 C 2891 — **Joan Humphrey Lefkow**, *Judge.*

ARGUED MAY 29, 2018 — DECIDED JULY 24, 2018

Before BAUER, BARRETT, and ST. EVE, *Circuit Judges*.

BAUER, *Circuit Judge.* This is the third time World Outreach
Conference Center's (World Outreach) long-running dispute
with the City of Chicago has appeared before us. *See World
Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531 (7th Cir.
2009) ("*World Outreach I*"); *World Outreach Conference Ctr. v.*

*City of Chicago*, 787 F.3d 839 (7th Cir. 2015) ("*World Outreach II*"). In this appeal, World Outreach contends that the district court erred by making a 70% across-the-board reduction to its award of attorney's fees. We find no reason to disrupt the district court's determination and affirm.

## I. BACKGROUND

The dispute and its ensuing litigation between World Outreach and the City of Chicago has a history beginning in 2005. We assume familiarity with our earlier opinions and abbreviate our discussion.

In July 2005, World Outreach, a Christian religious organization, purchased a building in the Roseland neighborhood on Chicago's south side from the YMCA. The building contains 168 single-room occupancy (SRO) units. The YMCA operated a community center and the SROs for the previous 80 years with little interference from the City's zoning authority. The community center was a "legal nonconforming use," meaning that the use of the center had previously conformed to zoning regulations, and when the zoning regulations changed to prohibit that use, the YMCA was allowed to continue using the building as a community center. *See* Chicago Zoning Ordinance § 17-15-0301.

The legal nonconforming status meant the YMCA, and ultimately World Outreach, did not need to obtain a Special Use Permit to operate the center. According to the City's zoning ordinance, the "[n]onconforming status runs with the land and is not affected by changes of tenancy, ownership, or management." Chicago Zoning Ordinance § 17-15-0106. The YMCA and World Outreach only needed to obtain the neces-

sary licenses from the City to operate the community center and the SROs.

When World Outreach applied for the necessary community center and SRO licenses in August 2005, the City informed World Outreach that it needed a Special Use Permit. The mystery as to why the City refused to issue the licenses and insist on the Special Use Permits, despite the legal nonconforming status, is not relevant and has been discussed in our previous opinions. *See World Outreach I*, 591 F.3d at 536; *World Outreach II*, 787 F.3d at 841–42. Regardless, the City's denial of the licenses and insistence on obtaining a Special Use Permit was unlawful.

While the City was preventing World Outreach from operating its community center and SROs, Hurricane Katrina struck New Orleans in late August 2005. Thousands of residents from the Big Easy were evacuated and transplanted to other cities, including Chicago. Representatives from the Federal Emergency Management Agency (FEMA) contacted World Outreach's director, Pastor Pamela Blossom, about entering into a contract to utilize their SROs. World Outreach claimed that it had a verbal agreement with FEMA to use the rooms at $750 per room, per month, for one year. However, World Outreach never received any evacuees.

In December 2005, the City pursued its unlawful demands by suing World Outreach in Illinois state court for operating the community center without a Special Use Permit. The suit was frivolous, and the City voluntarily dismissed it in April 2006 after World Outreach presented the City with its affirmative defenses and counterclaims. Shortly thereafter, World

Outreach turned around and filed a new lawsuit in state court against the City, which the City removed to federal court. However, the City continued to deprive World Outreach of the necessary licenses. Finally, in January 2007, the City signed off on World Outreach's license applications, and issued the licenses in August 2007.

World Outreach's nine-count lawsuit put forward a variety of claims, including claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc. The district court initially dismissed the complaint for failure to state a claim, but we reversed in part, sending the RLUIPA claims back, among others. *See World Outreach I*, 591 F.3d at 537–38. On remand, the City and World Outreach each filed motions for summary judgment; the City on all remaining claims, and World Outreach only on its RLUIPA claims. The district court granted summary judgment to World Outreach on part of its RLUIPA claim relating to defending the frivolous lawsuit, but found in favor of the City on all the remaining claims. The court awarded damages to World Outreach for the amount of fees and expenses incurred in responding to the frivolous lawsuit, and the parties entered into an agreed final judgment order in November 2013, awarding $15,000 to World Outreach.

The City and World Outreach cross-appealed, and we affirmed the district court's grant of summary judgment to World Outreach on the RLUIPA claim relating to the frivolous lawsuit. However, we reversed and remanded again, but only with respect to World Outreach's RLUIPA claim regarding the City's unlawful deprivation of the licenses. *See World Outreach II*, 787 F.3d at 843–45. We provided the district court

"guidance" on remand, and noted that the largest element of damages from the deprivation of the licenses related to the lost opportunity to house Hurricane Katrina evacuees. *Id.* at 844 ("$750 times 12 months times 168 rooms is $1,512,000"). Importantly, we stated that the evidence put forth by World Outreach was "weak," and there was uncertainty as to "whether World Outreach would have received *any*, let alone 168, evacuees, let alone for a full year." *Id.* We concluded that "[t]here has been a failure of proof, which leaves us uncertain whether World Outreach can recover substantial damages," but that ultimately, there were questions of fact that needed to be resolved at trial. *Id.* at 844–45.

On remand, World Outreach continued to produce a significant amount of discovery on its damages theory. Throughout the litigation, World Outreach consistently made substantial damages claims: September 2007, $1.89 million; February 2010, $2.44 million; December 2015, $1.09 million. However, by February 2016, World Outreach significantly reduced its damages claim to $363,000. On April 1, 2016, the City made an offer of judgment to World Outreach in the amount of $25,001 "plus reasonable costs and attorney's fees accrued as of the date of this offer … as determined by the Court." Three days later, the City filed an emergency motion for leave to file a motion for summary judgment on damages, and to continue the trial date based on World Outreach's repeated revision of its damages claims and belated production of discovery. That same day, World Outreach accepted the City's offer of judgment.

World Outreach then filed a petition for $1,913,929.20 in attorney's fees. The City responded with numerous objections,

and the district court modified the lodestar to $1,559,991.50. *World Outreach Conference Ctr. v. City of Chicago*, 234 F. Supp. 3d 904, 909–19 (N.D. Ill. 2017). After calculating the lodestar, the court determined that a 70% across-the-board reduction was warranted, reducing the lodestar to $467,973.45. *Id.* at 920–22. The court justified its reduction by noting that World Outreach's award of $40,001 was a "dismal failure" in contrast to the substantial damages it had sought for nearly nine years. *Id.* at 920. Additionally, the court stated that the reduction "recognizes that World Outreach's attorneys never had a realistic valuation of the case," and that "[i]t might have settled much earlier had counsel … been less concerned with recovering a large fee award." *Id.* at 922.

## II.  DISCUSSION

A district court may award reasonable attorney's fees to a prevailing party in RLUIPA actions. 42 U.S.C. § 1988(b). We review a court's award of attorney's fees for an abuse of discretion. *Montanez v. Simon*, 755 F.3d 547, 552–53 (7th Cir. 2014). A "district court is in the best position to make the 'contextual and fact-specific' assessment of what fees are reasonable." *Id.* at 553 (quoting *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010)).

World Outreach does not challenge the district court's modified lodestar calculation. Instead, it only challenges the court's 70% across-the-board reduction to the lodestar. "Although the lodestar yields a presumptively reasonable fee, the court may nevertheless adjust the fee based on factors not included in the computation." *Id.* (internal citations omitted). A crucial factor in determining whether to adjust an award

upward or downward is the result obtained by the prevailing party, particularly when "a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The district court must determine whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* When "a plaintiff has obtained excellent results, [the] attorney should recover a fully compensatory fee," but, if "a plaintiff has achieved only partial or limited success, [the lodestar] may be an excessive amount." *Id.* at 435–36.

World Outreach offers no reason to disturb the district court's thoughtful determination that the lodestar was not a reasonable amount based on the results World Outreach obtained. The court correctly found that World Outreach's damages award was a far cry from its lofty goals. From September 2007 until February 2016, World Outreach continuously pursued a seven-figure damages award, yet only obtained $40,001 after nine years of litigation. Given World Outreach's demands throughout, its ultimate damages award could hardly be characterized as an excellent result.

World Outreach argues that the City engaged in a "scorched earth defense," which it claims resulted in the case being dragged out for nine years. Yet, World Outreach admitted in its fee petition below that its lawsuit had "two central purposes:" (1) defeat the frivolous lawsuit; and (2) obtain the necessary licenses. Both of those objectives were achieved by August 2007, and from that point until April 2016, this case was primarily about damages. The district court judge, who oversaw the case from December 2010 until this

appeal,[1] found that World Outreach's attorneys "never had a realistic valuation of the case," and that the parties might have settled earlier had World Outreach been more concerned with resolving the case. In the court's view, World Outreach was primarily responsible for the considerable length of the litigation. This was a reasonable conclusion given that World Outreach had achieved the equitable relief it sought by August 2007.

The district court did note that World Outreach obtained some success throughout the litigation. The court considered that World Outreach prevailed twice before us, which did delay the resolution of the case, and it acknowledged that *World Outreach II* had established precedent under RLUIPA. It also acknowledged that the litigation resulted in a public benefit to the Roseland community, although any benefit was achieved by August 2007 when the City issued the necessary licenses. World Outreach raises these exact same points on appeal, but we have no reason to upset the court's careful balancing of these successes versus the limited damages award it ultimately obtained.

We have previously upheld these sorts of reductions to the lodestar when plaintiffs have achieved limited success. *See Sommerfield v. City of Chicago*, 863 F.3d 645, 650–52 (7th Cir. 2017); *Montanez*, 755 F.3d at 556–57. There is no particular algorithm for making such reductions to the lodestar. *Richardson v. City of Chicago*, 740 F.3d 1099, 1103 (7th Cir. 2014).

---

[1] The case was reassigned on December 8, 2010, from another district court judge.

However, the district court is in a better position to assess whether a particular damages award "is a spectacular success, a dismal failure, or something in between; and whether the plaintiff's lawyers would have spent substantially less time on the case had they been more realistic." *Montanez*, 755 F.3d at 556.

Even with the 70% across-the-board reduction, the court awarded $467,973.45 in attorney's fees, hardly an insignificant amount and 12 times the damages award of $40,001. The court properly exercised its discretion in reducing the lodestar, and awarded reasonable attorney's fees to World Outreach in light of the limited results it achieved.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's award of attorney's fees.