In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 12-1506 & 13-1265

DETLEF SOMMERFIELD,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO,

*Defendant-Appellee*.

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 06 C 3132 — **Harry D. Leinenweber**, *Judge*.

_____

ARGUED MAY 19, 2017 — DECIDED JULY 12, 2017

_____

Before WOOD, *Chief Judge*, and POSNER and KANNE, *Circuit Judges*.

WOOD, *Chief Judge*. After years of protracted litigation, a jury awarded Chicago Police Officer Detlef Sommerfield $30,000 in his workplace discrimination suit. For his efforts, Sommerfield's lawyer requested $1.5 million in attorney's fees, a sum the district court reduced to $430,000. Sommerfield now appeals, challenging the district court's

handling of his case and, in particular, its refusal to grant his attorney the full $1.5 million. We affirm.

## I

Sommerfield has been an officer with the Chicago Police Department (CPD) since 1994. From 2000 to 2007 he was assigned to the Eighth District, where he worked with Sergeant Lawrence Knasiak. Sommerfield is Jewish and German, which evidently bothered Knasiak. Throughout that time Knasiak publicly made offensive remarks about Sommerfield's ethnicity. Examples include "Jews are bloodsucking parasites" and "Germans are like niggers, couldn't get rid of them then, can't get rid of them now." We will not belabor the point—Knasiak's other comments were similarly outrageous.

Sommerfield complained, and in March 2004 CPD's Internal Affairs Division launched an investigation of Knasiak that culminated in his suspension in April 2007. (Knasiak retired that June and so he never served this suspension.) Sommerfield also filed a charge with the Equal Employment Opportunity Commission (EEOC), which found "reasonable cause to believe that [CPD] violated Title VII by harassing [Sommerfield] based on his national origin, German, and religion, Jewish." These complaints, Sommerfield believes, led to retaliation from an amorphous group of "supervisors" that included, but was not limited to, Knasiak. The alleged retaliatory acts included frequent postings to undesirable hospital duty, requirements to use his own car for police work, refusals to give him a beat-car assignment, and assignments in which he had to work alone. Sommerfield was disciplined, too: Knasiak filed an insubordination complaint against him on March 15, 2004; other officers lodged complaints in January 2003, December 2004, and April 2005.

The cumulative disciplinary actions rendered Sommerfield ineligible for a promotion to the coveted post of dog handler. We refer to these incidents collectively as "staffing decisions."

Sommerfield did not take this lying down. He filed another EEOC charge alleging retaliation, and the agency once again found reasonable cause. In June 2006, Sommerfield's lawyer, Joseph A. Longo, filed this lawsuit. The amended complaint alleged (1) discrimination based on religion, (2) discrimination based on national origin, (3) retaliation, (4) violation of 42 U.S.C. § 1981, and (5) violation of 42 U.S.C. § 1983. Sommerfield later asked the district court to sanction the City for not informing him that the City Council passed two resolutions congratulating Knasiak on his retirement.

In September 2010 the district court pared down the complaint considerably by granting partial summary judgment for the City. It confined the discrimination counts (1 and 2) to the question whether Knasiak's statements had created a hostile work environment, and it eliminated Counts 4 and 5 altogether for lack of any evidence that would permit a finding that Sommerfield's injury resulted from an express policy, a widespread practice, or a policymaker's final action. It restricted the retaliation claim (Count 3) to the period after 2004. It excluded the staffing decisions from Count 3 because Sommerfield failed to point to facts establishing a jury question. Finally, the court refused to sanction the City, because the congratulatory resolutions were publicly available and there was no hint of bad faith in the City's failure to send them to Sommerfield.

The slimmed-down case proceeded to trial, and in January 2012 the jury found for Sommerfield on the discrimination counts, but for the City on the retaliation count. It awarded

him $30,000, which prompted Longo to seek a princely
$1,496,930 in attorney's fees for having prevailed. Longo
claimed to have worked 3,742 hours at an hourly rate of $395.
Magistrate Judge Cole reduced the hours to 2,878 and the rate
to $300, which yielded a lodestar of $863,000. At that point, he
took into account the modest degree of success Sommerfield
had achieved and halved the lodestar, for a final fee of
$430,000. The district court approved that recommendation,
and this appeal followed.

## II

Sommerfield's complaints on appeal are wide-ranging, in-
cluding the adverse rulings on summary judgment, the rejec-
tion of sanctions against the City, and the substantial reduc-
tion in the requested attorney's fees. We address the merits
first, and then turn to the fees.

## A

A plaintiff suing under Title VII "may pursue a claim not
explicitly included in an EEOC complaint only if her allega-
tions fall within the scope of the earlier charges contained in
the EEOC complaint." *Ezell v. Potter*, 400 F.3d 1041, 1046
(7th Cir. 2005). To decide if additional claims meet that stand-
ard, we ask if they are "like or reasonably related to those con-
tained in the EEOC complaint. If they are, then we ask
whether the current claim reasonably could have developed
from the EEOC's investigation of the charges before it." *Id.*
Claims are "reasonably related" when "there is a factual rela-
tionship between them." *Id.* The EEOC charge and the com-
plaint "must describe the same conduct and implicate the
same individuals." *Id.*

Sommerfield's first EEOC charge accused Knasiak of creating a "hostile work environment" by using "offense [*sic*] racial remarks about Jewish people, Germans, African-Americans and Mexicans." Sommerfield argues that his allegations about undesirable work assignments, suspensions, and denial of the "K-9" job all fit under this broad language and hence that the district court erred in excluding them. But the original charge does no more than describe verbal abuse by Lawrence Knasiak; it does not refer to any other people or conduct. Moreover, many of the staffing decisions to which Sommerfield alludes do not appear to be Knasiak's doing at all, but rather are the work of an ill-defined group of "supervisors." This is not enough to show that the staffing decisions "implicate the same individuals." *Ezell*, 400 F.3d at 1046. In fact, it is hard to see how the staffing decisions reflect discrimination at all. Knasiak is the only CPD officer Sommerfield accuses of bigotry. His core theory is that after Knasiak made offensive remarks and Sommerfield complained, "supervisors" retaliated against Sommerfield for those grievances. That describes a case about retaliation, not discrimination. And indeed, that is just how the district court saw it: if they were anything, these incidents supported claims about retaliation under Count 3, not discrimination under Counts 1 and 2.

Sommerfield's fallback evidentiary argument is no better. He maintains that even if the staffing decisions were not actionable as discrimination claims, they still could be used as evidence that Knasiak's statements were discriminatory. We do not see how. Sometimes pre-charge evidence can help to demonstrate a pattern of hostile action, but typically the same people and the same type of harassment will be involved. Sommerfield did not provide enough information about these earlier slights to permit that kind of linkage. And to the extent

that he was trying to smuggle the staffing decisions back into the case as an independent ground of relief, the court was entitled to block such a move.

B

On to retaliation. The district court's summary judgment decision excluded as untimely all of the allegedly retaliatory staffing decisions and limited Sommerfield to arguing that Knasiak's remarks after his 2004 complaint were retaliatory. This ruling effectively gutted Sommerfield's retaliation claim.

We take a fresh look at summary judgment decisions, construing facts and inferences in the light most favorable to the non-movant. *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016). The parties are required to put their evidentiary cards on the table, and if that evidence shows that there is no genuine issue of material fact, the court is entitled to resolve the case without a trial. Summary judgment is not a time to be coy: "[c]onclusory statements not grounded in specific facts" are not enough. *Id*. The non-movant must "cit[e] to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).

Sommerfield failed to meet this burden. We cannot improve on the district court's summary of the record:

> The argument is not organized in any logical fashion. The court has attempted to review all of the record evidence of retaliation cited by Sommerfield in this portion of his brief. Several of the citations point to portions of documents that were not provided to the court; others point to evidence which does not support Sommerfield's contentions. In many places, Somerfield's only citation is "*Supra*." or "*Infra*." The

court cannot determine whether these generic references are meant to incorporate other citations. In any event, the court will not sift through the lengthy record for Sommerfield's evidence.

While Sommerfield is correct that the district court was duty-bound to construe the facts in his favor, he forgets that Rule 56 still requires him to identify the relevant facts. The judge rightly declined to wade through the voluminous record to find evidence on a counseled plaintiff's behalf. Sommerfield tried to salvage matters with a motion to reconsider, but that came too late.

## C

That leaves the sanctions request. In November 2007 and February 2008 the Chicago City Council passed generic resolutions that congratulated Knasiak on his retirement. These were publicly available. Highlights include thanking Knasiak for his "dedication, professionalism and personal sacrifice," references to the American Dream, and a quote from Winston Churchill.

Sommerfield maintains that the district court should have sanctioned the City for not bringing these documents to his attention. But the City had no reason to do so. Discovery is limited to matters "relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). It is hard to see how fill-in-the-name City Council resolutions have anything to do with the case. In any event, Sommerfield's position rests on a glaring mischaracterization of the district court's reasoning. He paints the City's non-disclosure as sanctionable and part of a long pattern of discovery misconduct. If that were true, the court's ruling would be harder to defend. But it is not. In fact, the district

court found no bad faith, no prejudice, and it expressly declined to pass on discovery spats that had occurred years earlier. We see no error in that ruling, much less a reversible one.

### III

In federal civil rights actions, district courts may grant the prevailing party "a reasonable attorney's fee." 42 U.S.C. § 1988. The award's size is a function of three numbers: the hours worked, the hourly rate, and any overall adjustments up or down. The district court first calculates the "lodestar," which is "the hours *reasonably* expended multiplied by the *reasonable* hourly rate—and nothing else." *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012) (emphases added). The total time should exclude work that was "excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))**.** The lodestar may also take into account factors such as "the amount involved and the results obtained," as well as "the experience, reputation, and ability of the attorneys." *Hensley*, 461 U.S. at 430 n.3 (listing factors). Once the lodestar is calculated, it may be appropriate to adjust it further. While "a plaintiff who achieves excellent results should receive the entire lodestar," that sum may be "excessive" for one who "has achieved only partial or limited success." *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (internal quotation marks and citation omitted). Extraordinarily good results, by the same token, may warrant extra compensation. We give the district court the benefit of the doubt when we review its decision on fees. *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017).

Magistrate Judge Cole scrupulously followed the proper procedure for determining attorney's fees. Longo reported that he had put 3,742 hours into the case. The magistrate judge

went through Longo's billing records item by item, ultimately subtracting 864 hours of time that, in the judge's view, was spent on unnecessary or frivolous work. That left 2,878 compensable hours. The magistrate judge also reduced Longo's requested hourly rate of $395 to $300. He noted that the affidavits Longo submitted to prove that the $395 rate was reasonable were of dubious worth, that defense counsel billed $275 per hour, and that Longo's associate received just $265 an hour. Perhaps most importantly, the reduction reflected Longo's poor performance over the years consumed by the litigation. Multiplying Longo's hourly rate by his compensable hours yielded a lodestar of $863,000. The magistrate judge then reduced that figure by 50% to reflect Longo's limited success and problematic litigation conduct. That left a fee award of $430,000. The district court adopted the magistrate judge's report and recommendation after a thorough review that considered and rejected Sommerfield's objections.

Sommerfield has carried those objections forward to this court. He first contends that the magistrate judge wrongly double-counted by excluding the hours spent on unnecessary filings when calculating the lodestar, and then halving the lodestar number. But these represent two distinct phases of the process. As we emphasized earlier, the lodestar is not just a number reached by mechanically multiplying requested hours times requested hourly rate; it requires an assessment of *reasonable* hours expended and a *reasonable* fee. Sometimes the court may conclude that counsel's requests in both respects are reasonable, but other times—as occurred here—the court may feel compelled to exclude unnecessary hours or to reduce an unsupported rate before calculating the lodestar.

After finding the lodestar, the court may make further adjustments that are appropriate for the case before it. Sometimes, again as here, it may decide that the final fee award should be lower than the lodestar because of a relative lack of success. We approved a nearly identical procedure in *Montanez*, 755 F.3d 547. There the district court began by excluding "unnecessary, duplicative, or insufficiently documented" hours from the compensable total, and then it cut the lodestar in half to reflect the plaintiff's limited success. *Id.* at 552, 555. We saw no problem with this, and remarked that "[a] plaintiff who achieves excellent results should receive the entire lodestar, but where a plaintiff has achieved only partial or limited success, the lodestar may be an excessive amount." *Id.* at 556 (internal quotation marks and citation omitted). *Montanez* is not an isolated example. Recently we affirmed a fee award in which a district court made "discretionary adjustments to the hours claimed and also halved the lodestar to reflect [the plaintiff's] limited success." *Baker*, 856 F.3d at 504. It was not a stretch for the district court in our case to come to the same conclusion: Longo spent over a decade on a case in which he lost on most claims and netted his client $30,000. A reduction for limited success strikes us as entirely appropriate.

Nor are we moved by Sommerfield's argument that the district court overemphasized the gap between the jury's award and his fee request. It is true that "we have rejected the notion that the fees must be calculated proportionally to damages." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (internal quotation marks omitted). But this is not a categorical ban on considering proportionality. The point instead is that "there is no rule *requiring* proportionality between damages and attorney's fees," but "a district

court *may* consider proportionality as one factor in determining a reasonable fee." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009) (second emphasis added).

Sommerfield fares no better in arguing that Longo's work on the unsuccessful claims should be compensated because they were inextricably linked to his successful claims. The assumption of such a tight link is questionable, at best. For the most part, the discrimination claims on which Sommerfield prevailed rest on facts that are quite distinct from the retaliation theory (*i.e.* verbal abuse instead of shift assignments and suspensions). Nevertheless, even if the claims really are interwoven, we have held that when it is impossible to separate time spent on winning and losing claims, "there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims." *Richardson v. City of Chicago, Ill.*, 740 F.3d 1099, 1103 (7th Cir. 2014). That outcome seems especially appropriate here, given the court's finding that Longo's conduct was responsible for the mess the case became.

Sommerfield's challenge to the court's choice of a $300 hourly rate for Longo is equally unpersuasive. Sommerfield complains that the court ignored six affidavits he submitted from other lawyers, all of whom said that Longo's $395 rate was reasonable. But the court did not ignore them; it simply put less weight on the affidavits than Longo would have liked. Some of the affiants did not practice in the same area (two affidavits do not even specify a practice area); others were not familiar with Longo's performance in this specific case; and the court had an unfavorable opinion about the

quality of his performance. Sommerfield insists that the affidavits must be taken at face value because they are "undisputed," but that is a mischaracterization. The City vigorously disputes the affidavits and supports its position with an affidavit claiming that $275 is the appropriate hourly rate.

Finally, Longo attacks the district court's decision to take note of criticisms in past decisions of his performance. The theory seems to be that the court's reference to his previous misconduct shows that the judges assigned to his case determined his fee based on personal animus rather than the lodestar. Nothing supports this accusation. To the contrary, the magistrate judge explicitly said that the ultimate fee award would have been the same even if Longo's previous mischief was ignored. The district court endorsed this point in its detailed decision reviewing and approving the magistrate judge's recommendation. It would not have been improper in any event for the judges to consider Longo's "experience, reputation, and ability." See *Hensley*, 461 U.S. at 430 n.3.

**IV**

We find no error in the district court's fee calculations nor in its handling of the case as a whole, and so we AFFIRM the judgment of the district court.