2020 IL App (1st) 192155-U
Order filed: December 11, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-2155

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LORENZO DAVIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 16 L 5088 |
| | ) | |
| CITY OF CHICAGO, | ) | Honorable |
| | ) | James E. Snyder, |
| Defendant-Appellant. | ) | Judge, presiding |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirmed the circuit court's order awarding plaintiff $660,254.24 in attorney fees and costs under the Whistleblower Act, finding no abuse of discretion.

¶ 2    This is the second appeal arising out of plaintiff Lorenzo Davis's trial on his complaint alleging Whistleblower Act violations and common-law retaliatory discharge against the City of Chicago (City). In the first appeal, we affirmed the $751,469.96 judgment for compensatory damages but reduced the $2 million award for emotional distress to $100,000, subject to plaintiff's

consent. While that appeal was pending, the circuit court awarded plaintiff attorney fees and costs in the amount of $660,254.24. The City now appeals the attorney fees award. We affirm.[1]

¶ 3    Plaintiff filed a complaint against the City alleging violations of sections 15(b) and 20 of the Whistleblower Act (740 ILCS 174/15(b), 174/20 (West 2016)), and common-law retaliatory discharge. On June 21, 2018, the jury found in favor of plaintiff on all three claims and awarded him $800,000 in compensatory damages for lost earnings, salaries, and benefits and $2 million in damages for emotional distress. The City filed a post-judgment motion for judgment notwithstanding the verdict (judgment *n.o.v.*) or a new trial on damages or, in the alternative, remittitur.

¶ 4    On November 7, 2018, the circuit court denied the City's motions for new trial and judgment *n.o.v.* The court granted the motion for remittitur in part, reducing the salary and benefits award by $48,530, which plaintiff accepted, but denying remittitur of the $2 million in damages for emotional distress. The court entered judgment in the total amount of $2,751,469.96, representing the $2 million in emotional distress damages and $751,469.96 in compensatory damages for salary and benefits.

¶ 5    The City appealed on December 3, 2018, arguing that the $2 million award for emotional distress also should be remitted because it was outside the range of fair and reasonable compensation, resulted from passion or prejudice, shocked the judicial conscience, and was barred by the prohibition in section 2-102 of the Local Governmental and Governmental Employees Tort

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

Immunity Act (745 ILCS 10/2-102 (West 2016)) on punitive and exemplary damages against Illinois municipalities.

¶ 6    However, on October 24, 2018, the circuit court, while it still retained jurisdiction over this case, granted plaintiff leave to file by November 29, 2018, a petition for attorney fees and costs pursuant to the Whistleblower Act. A series of continuances was granted and plaintiff was eventually given until May 15, 2019, to file his petition for attorney fees. On May 15, 2019, plaintiff filed a petition in the circuit court for $676,006.99 in attorney fees and costs pursuant to section 30 of the Whistleblower Act, which provides that "[i]f an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole, including but not limited to *** litigation costs *** and reasonable attorney's fees." 740 ILCS 174/30 (West 2018).

¶ 7    In light of the circuit court's October 24, 2018, order and plaintiff's pending attorney fees petition, the City recognized that its December 3, 2018, appeal was premature in the absence of a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016) that there was no just reason for delaying enforcement or appeal of the November 7, 2018, order. See *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶¶ 25-26 (where a claim for attorney fees is outstanding, a party may not appeal a different claim unless he obtains a Rule 304(a) finding). On July 1, 2019, the City filed an unopposed motion in the circuit court for a Rule 304(a) finding that there was no just reason for delaying appeal of the court's November 7, 2018, order which entered judgment on the jury's verdict for $2,751,469.96.

¶ 8    On July 17, 2019, the circuit court entered the Rule 304(a) finding providing that there was no just reason for delaying enforcement or appeal of its November 7, 2018, order. On July 23,

2019, the City filed a timely notice of appeal from the July 17, 2019, order entering the Rule 304(a) finding, which was the jurisdictional prerequisite enabling us to consider the City's first appeal.

¶ 9    On January 31, 2020, we affirmed the finding of liability against the City on plaintiff's Whistleblower Act and retaliatory discharge claims and the award as reduced by the circuit court for salary and benefits but reduced the $2 million damages award for emotional distress to $100,000, subject to plaintiff's consent. See *Davis v. City of Chicago*, 2020 IL App (1st) 182551-U. We remanded the cause for a new trial on the question of damages for emotional distress if plaintiff did not consent to the remittitur. *Id.* Plaintiff did not accept the remittitur and therefore a new trial will be held on the issue of damages for his emotional distress claim.

¶ 10    Meanwhile, due to the Rule 304(a) finding, the circuit court retained jurisdiction over plaintiff's claim for attorney fees. See *F.H. Prince Co., Inc. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 989 (1994) (discussing how a Rule 304(a) finding on one claim does not divest the court of jurisdiction over the remaining claims). On September 27, 2019, *prior* to our decision in *Davis* remitting his damages award for emotional distress, the circuit court awarded plaintiff $623,660.34 in attorney fees and $36,593.90 in litigation costs, for a total award of $660,254.24. The City now appeals from the attorney fees award pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017), contending that it was unreasonably high in light of our subsequent decision in *Davis* remitting the $2 million damages award for emotional distress. The City does not challenge the $36,593.90 in litigation costs awarded in the same order.

¶ 11    A petition for attorney fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987). The party seeking attorney fees bears the burden of presenting sufficient evidence of their reasonableness. *Young v. Alden Gardens of*

*Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 102. In determining whether the attorney fees awarded under the Whistleblower Act are "reasonable," courts assess a number of factors including: " 'the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client [citation], and whether there is a reasonable connection between the fees and the amount involved in the litigation.' " *Id.* (quoting *Kaiser*, 164 Ill. App. 3d at 984). We review the award of attorney fees for an abuse of discretion. *Id.* ¶ 105.

¶ 12   In this case, in support of his attorney fees claims, plaintiff's counsel submitted, and the circuit court reviewed, over 150 pages of detailed billing sheets setting forth the work that was performed on plaintiff's behalf, the hourly rate, the time expended, and the corresponding charge. The court disallowed several of the requested fees, including those incurred for mediating certain federal claims, those incurred for deposing a retired judge and former interim director of the Independent Police Review Authority (IPRA), those incurred for multiple attorney appearances for non-substantive purposes, and those incurred for certain clerical tasks. The court concluded:

> "With the above reduction, the Court finds the hourly attorneys' fees in Plaintiff's petition to be fair and reasonable based on the skill and standing of the attorneys involved, the significance of the case, the customary charges for comparable services, the benefit to the client and the reasonable connection between the fees sought and the amount of litigation involved. Plaintiff is awarded attorneys' fees in the amount of $632,056.25 and expenses in the amount of $36,593.90. The total amount of attorneys' fees and expenses is $668,650.15. However, Defendant has previously paid to Plaintiff a portion of these fees

in the amount of $8,395.91 pursuant to a sanctions order and as such the Court reduces the total amount to $660,254.24."

¶ 13    The City does not now dispute any of the court's factual findings regarding the reasonableness of the attorney fees based on the skill and standing of the attorneys involved, the significance of the case, the customary charges for comparable services, and the reasonable connection between the fees sought and the amount of litigation involved. The City's only argument is that we should reduce the attorney fees awarded by the circuit court because, subsequent to their award, we remitted plaintiff's $2 million damages award for emotional distress to $100,00, subject to his consent, and thereby lessened the benefit he received from his attorneys' services. The City contends that we should now reduce plaintiff's attorney fees "commensurate with the substantial reduction" of his $2 million damages award for emotional distress.

¶ 14    The City acknowledges that there is "little Illinois case law addressing how to analyze the 'benefit to the client' factor" when determining the appropriate amount of attorney fees. Accordingly, the City cites several federal court cases which, it claims, supports its argument for a reduction in the attorney fees awarded based on plaintiff's reduced benefit when we subsequently remitted his $2 million award for emotional distress.

¶ 15    In *Montanez v. Simon*, 755 F. 3d 547 (7th Cir. 2014), the plaintiff won a $2,000 jury verdict in an excessive-force case brought against two Chicago police officers. *Id.* at 550. Plaintiff's attorneys then sought over $400,000 in attorney fees. *Id.* The district court calculated the "lodestar," which is the product of the hours reasonably expended on the case multiplied by the reasonable hourly rate (*id.* at 553), but reduced the amount by 50% to about $110,000. *Id.* at 550, 556. The appellate court affirmed, holding that:

"In setting a reasonable fee, the district court must determine whether the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. A plaintiff who achieves excellent results should receive the entire lodestar, but where a plaintiff has achieved only partial or limited success, the lodestar may be an excessive amount." [Internal quotation marks and citations omitted.] *Id.* at 556.

¶ 16    The appellate court found that plaintiff did not achieve excellent results where he lost four of his six claims, and where he won only a "minimal" amount of damages in light of the time expended to achieve it. *Id.* at 556. The district court committed no abuse of discretion in reducing the attorney fee award to $108,350.87 where "the plaintiff's lawyers would have spent substantially less time on the case had they been more realistic" and where the award was still quite generous in relation to plaintiff's recovery. *Id.* at 557.

¶ 17    In *Richardson v. City of Chicago*, 740 F. 3d 1099 (7th Cir. 2014), plaintiff brought a civil rights case against the City, rejected a "generous" settlement offer, asked the jury for $200,000 in damages, yet recovered only $3,001. *Id.* at 1101. Plaintiff's counsel asked for $675,000 in fees. *Id.* The district court calculated the lodestar, reduced it by about 80% because the result achieved at trial was a "flop," and awarded fees in the amount of $123,000. *Id.* The appellate court affirmed, noting that plaintiff lost 38 of his 39 claims, that the jury gave him only 1.5% of what he sought, which was a "dismal outcome," and that the attorney fee award of $123,000 was generous in relation to plaintiff's recovery and cannot be condemned as too low. *Id.* at 1103.

¶ 18    In *Sommerfield v. City of Chicago*, 863 F. 3d 645 (7th Cir, 2017), a jury awarded plaintiff $30,000 in his workplace discrimination suit. *Id.* at 647. Plaintiff's attorney then requested $1.5 million in attorney fees. *Id.* The district court calculated the lodestar and reduced it by 50% to $430,000 to reflect the limited success achieved. *Id.* at 651. The appellate court affirmed, holding

that the reduction of the fee award for limited success was "entirely appropriate" where plaintiff's attorney "spent over a decade on a case in which he lost on most claims and netted his client $30,000." *Id.* at 651.

¶ 19    In *World Outreach Conference Center v. City of Chicago*, 896 F. 2d 779 (7th Cir. 2018), a religious organization brought an action against the City of Chicago alleging violation of the Religious Land Use and Institutionalized Persons Act of 2000. *Id.* at 781. From September 2007 until February 2016, World Outreach continuously pursued a seven-figure damages award, yet only obtained $40,001 after nine years of litigation. *Id.* at 783. World Outreach filed a petition for $1,913,929.20 in attorney fees. *Id.* at 782. The district court calculated the lodestar, but reduced that amount by 70% to $467,973.45 because it found that World Outreach's attorneys never had a realistic valuation of the case, that the $40,001 award was a "dismal failure" in contrast to the substantial damages that were sought for nine years, and that World Outreach was primarily responsible for the considerable length of the litigation. *Id.* at 782-83. The appellate court affirmed, holding that reductions to the lodestar are upheld when plaintiffs have achieved limited success (*id.* at 783 (citing *Sommerfield*, 863 F. 3d at 650-52 and *Montanez*, 755 F. 3d at 556-57)) and that the district court is in the best position to determine whether plaintiff's attorneys should have been more realistic about their chances of success and whether they should have spent substantially less time on the case. *Id.* at 783-84.

¶ 20    Initially, we note that, unlike the instant case, none of the cases cited by the City involved the appellate court being asked to reduce the trial court's award of attorney fees based solely on the argument that an earlier appeal resulted in the remittitur of a portion of the plaintiff's damages award. Accordingly, the City's cases are inapposite.

¶ 21 The cases cited by the City are also inapposite because the results achieved here for plaintiff were not "minimal" as in *Montanez*, a "flop" and a "dismal outcome" as in *Richardson*, a "limited success" as in *Sommerfield*, or a "dismal failure" as in *World Outreach*. To the contrary, following the jury trial, the circuit court entered judgment on all of plaintiff's claims in the total amount of $2,751,469.96, which represented the $2 million in emotional distress damages and the $751,469.96 in compensatory damages for salary and benefits. Even if (for purposes of calculating the benefit plaintiff received) we disregard the $2 million awarded in emotional distress damages because plaintiff rejected our remittitur and has elected to have a new trial thereon, he still recovered over $750,000 in compensatory damages which we affirmed on appeal. Unlike *Montanez*, *Richardson*, *Sommerfield*, and *World Outreach*, in which the respective plaintiffs there sought attorney fees that were between 48 and 225 times the amount of damages they received, and were reduced accordingly by the trial court and affirmed on appeal, the amount of attorney fees and costs awarded here, $660,254.24, was less than the amount recovered in compensatory damages alone and thus was not overly generous in relation to his recovery and was reasonably connected to the amount involved in the litigation. Further, unlike in *Montanez*, *Richardson*, *Sommerfield*, and *World Outreach*, the City has pointed to nothing in plaintiff's counsel's billing records indicating that they billed for hours pursued in an ultimately losing effort that was of minimal value to plaintiff. As discussed, plaintiff received a significant compensatory damages award worth over $750,000 and an emotional distress award that, even after our remittitur, we found to be worth $100,000. There was a reasonable connection between the attorney fees and the benefit received by plaintiff.

¶ 22 We also note that when assessing attorney fees, the accrual of a public benefit not reflected in the monetary damage award may also be considered. See *Berlak v. Villa Scalabrini Home for*

*the Aged, Inc.*, 284 Ill. App. 3d 231, 239 (1996). There was a public benefit here because, as discussed in *Davis*, 2020 IL App (1st) 182551-U, the whistleblower litigation initiated by plaintiff exposed how the chief administrator and deputy chief administrator of the IPRA improperly pressured subordinates to cover up police misconduct. The public benefit achieved by plaintiff's whistleblower litigation further supports the attorney fees award.

¶ 23 The City cursorily argues that plaintiff unnecessarily increased the length of the litigation, thereby also unnecessarily increasing his attorney fees. However, the City points to no specific instances of dilatory tactics engaged in by plaintiff and cites to nothing in the record on appeal supporting its argument, and therefore the issue is forfeited. See Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020).

¶ 24 On this record, we find no abuse of discretion in the court's award of $660,254.24 in attorney fees and costs and we reject the City's argument that we reduce the attorney fees award commensurate with our reduction of plaintiff's award for emotional distress. In light of the fact that the attorney fees award was not an abuse of discretion even after our subsequent reduction of plaintiff's award for emotional distress, and as the City makes no argument that the circuit court made any factual errors in its computation of the award, and does not challenge any specific fee charged, we decline the City's request to remand the attorney fees award to the circuit court for reconsideration.

¶ 25 For all the foregoing reasons, we affirm the circuit court.

¶ 26 Affirmed.