In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-3492

LYDIA E. VEGA,

*Plaintiff-Appellee,*

*v.*

CHICAGO PARK DISTRICT,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-00451 — **Jorge L. Alonso**, *Judge.*

———————————

ARGUED MAY 27, 2021 — DECIDED SEPTEMBER 1, 2021

———————————

Before KANNE, SCUDDER, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Title VII of the Civil Rights Act of
1964 is one of several federal statutes that allows a prevailing
party to shift its attorneys' fees to its adversary. After years of
litigation, a federal jury sided with Lydia Vega on her national
origin discrimination claim against the Chicago Park District.
We affirmed that result on appeal. The parties then began dis-
cussing Vega's attorneys' fees request. But, just as in the mer-
its litigation, the parties could not resolve their differences.

Vega ultimately submitted two fee petitions to the district court—covering two distinct time periods—that the court granted. The district court also granted Vega's request for a tax-component award to offset her income tax liability on the backpay award from her successful Title VII claim. The Park District now appeals, taking aim at both the reasonableness of the attorneys' fee awards and the amount of the tax-component award. For the reasons discussed below, we affirm.

I

In 2013, Lydia Vega, a Hispanic woman, brought 12 claims against the Chicago Park District all related to its investigation and termination of her employment for allegedly falsifying her timesheets. After extended pretrial motions practice, the district court allowed Vega's national origin discrimination and retaliation claims under 42 U.S.C. § 1983 and Title VII to proceed to trial.

The jury returned a verdict for Vega on the discrimination claims, but not the retaliation claims, and awarded $750,000 in damages. The Park District moved for remittitur and for judgment as a matter of law on the discrimination claims; the district judge granted the former, reducing the award to Title VII's statutory maximum of $300,000, and partially granted the latter, entering judgment for the Park District on Vega's § 1983 discrimination claim. After the district court held an equitable damages hearing, it ordered the Park District to reinstate Vega in her position, pay her backpay, provide her with the cash value of lost benefits, pay prejudgment interest, and pay a tax-component award (that is, an award granted to make a plaintiff whole by easing the tax burden from a lump-sum award).

The Park District appealed every decision it lost at trial, and Vega cross-appealed the district court's ruling on her § 1983 discrimination claim. We affirmed all the district court's rulings except for the tax-component award, which we held was not explained sufficiently for meaningful appellate review. The facts are set forth fully in our previous opinion. See *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1002–03 (7th Cir. 2020).

Not part of that first appeal was the issue of attorneys' fees. On March 28, 2019, Vega submitted her first fee petition totaling $1,073,901.25. With her motion Vega included a 200-page document listing the date on which the work occurred, the billing attorney, a brief description of the work performed, the hours expended, and the total cost of the work. Vega redacted portions of the entries that she maintained were privileged or revealed litigation strategy. Vega's counsel, Catherine Simmons-Gill,[1] submitted sample contingent-fee agreements from 2018 and 2019, an hourly fee agreement, two agreements from her work as an expert witness, and three declarations from Chicago employment lawyers to support her current hourly rate of $425 for general tasks and $450 for in-court work. And she included declarations from three employment law practitioners attesting that the time she spent on this case, considering all circumstances, was reasonable.

The Park District objected to all but $41,784.88 of Vega's fee petition. It also insisted that the court should apply Simmons-Gill's hourly rate at the time the litigation began of $300

---

[1] When we refer to Simmons-Gill, we are referring to all Vega's many counsel.

per hour. The district court, in an order dated July 20, 2020,[2] granted Vega's first fee petition in the amount of $1,006,592. The court noted that the fees were "a massive amount for a single-plaintiff employment discrimination case" but laid some of the blame on the Park District for taking "a scorched-earth litigation approach" that "played a role in inflating the time [Vega's] counsel spent on the case." After noting that Vega voluntarily eliminated billing entries that exclusively concerned her unsuccessful claims, the district court held that Vega's claims "were all bound up together in the same essential course of events consisting of the investigation of [Vega's] timesheets and her ultimate termination." Nonetheless, the district court reviewed Vega's fee petition line by line (although under no obligation to do so). The court then disallowed line entries it found to be "plainly deficient" and reduced the total fee amount by 5% across the board.

The district court also held that using Simmons-Gill's current billing rates was reasonable based on the three contingency representation agreements, affidavits from employment lawyers, an unexecuted hourly fee agreement, and Simmons-Gill's expert witness agreements. The district court rejected the Park District's request to apply Vega's historical billable rates, reasoning that the Park District did not satisfy its burden under *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011), "to provide a good reason why a lower rate is essential" in this case, "particularly given that the delay in resolving this case can hardly be blamed on [Vega] or her counsel." Noting that we have approved fee awards based on both current and historical billing rates, the court reasoned

---

[2] We refer to this order as the "July 20 order" to distinguish it from the district court's order concerning Vega's supplemental fee petition.

that the "current-rate method has the virtue of simplicity" and was "more appropriate in a long-pending, multi-year case such as this one."

Vega filed a second fee petition totaling $254,635.69 for Simmons-Gill's work following the first petition. The Park District objected to every entry except for $10,160. The district court disallowed Simmons-Gill's fees for litigating a motion for clarification, for the cross-appeal of Vega's § 1983 claim, and for hours her legal team spent conferring amongst themselves, ultimately awarding $218,221.69 in supplemental fees.

In addition to attorneys' fees, the district court also granted Vega a tax-component award of $49,224.30. The court based this award on redacted tax records Vega provided from 2013 to 2019, showing no actual tax liability for each year from 2013 to 2017 and $2,800 in tax liability for 2018; her testimony that, had she remained employed with the Park District from 2012 to 2017, she would not have paid any federal income tax (based on her zero tax liability while employed with the Park District from 2010 to 2012); her testimony that she would have paid $2,800 in federal income tax in 2018 if employed with the Park District; and a calculation of the award, following the methodology described in *Washington v. Office of the State Appellate Defender*, No. 12 C 8533, 2016 WL 3058377 (N.D. Ill. May 31, 2016). When employing the *Washington* methodology, the district court calculated Vega's total income for the current tax year by adding together the backpay award and the compensatory damages award. It used this total to calculate Vega's effective tax rate. The court then applied that effective tax rate to the backpay award (but not to the compensatory damages) to arrive at the tax-component award. In doing so, the court rejected the Park District's argument that the compensatory

damages award should not be used to calculate Vega's effective tax rate.

## II

The Park District appeals the district court's attorneys' fees and tax-component awards. We address each in turn.

## A

Section 2000e-5(k) of Title 42 permits a district court, in its discretion, to award reasonable attorneys' fees to the prevailing party in a Title VII action. *Pickett*, 664 F.3d at 639. We review a district court's determination of attorneys' fees under a highly deferential abuse of discretion standard. *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 954 (7th Cir. 2019). That level of deference follows from the nature of attorneys' fees litigation. Specifically, we have observed that: "(1) [the district court] possesses superior understanding of the litigation and there exists a desirability of avoiding frequent appellate review of what essentially are factual matters; (2) the need for uniformity in attorneys' fees awards is not great enough to warrant appellate review of minutia; and (3) the desirability of avoiding a second major litigation strictly over attorneys' fees is high." *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) (internal citations and alteration omitted); see *Fox v. Vice*, 563 U.S. 826, 838 (2011). In practice, then, we find an abuse of discretion only "where no reasonable person could take the view espoused by the district court." *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (quotation omitted). To the extent the appeal challenges the district court's application of the "correct legal framework", we review de novo. *Nichols v. Ill. Dep't of Transp.*, 4 F.4th 437, 441 (7th Cir. 2021).

1

The Park District's opening salvo takes broad aim at the district court's approach to the burden of proving reasonable fees under *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Neither party disputes that, under *Hensley*, Vega "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* at 437. But the Park District insists that the district court relieved Vega of that burden by acquiescing in Vega's failure to "sufficiently document the tasks for which she [sought] fees[,]" instead requiring the Park District to "ferret out missing information." In support, the Park District points to two aspects of the district court's orders: (1) the district court's "misgivings about the size of Vega's legal bill" evidenced by several quotes from the July 20 order; and (2) the district court's statement from the November 16 order, when addressing the Park District's objections on vagueness grounds, that the Park District should have "ascertain[ed] during the meet-and-confer process what work [certain] entries … pertained to, and, if appropriate, propose[d] a reduction on some reasonable basis other than intuition."

The Park District's argument, however, misses the mark. The amount of the award in this case is no doubt very high, even for litigation that has been going on since 2013. But the district court's analysis is not at odds with *Hensley*. The district court first evaluated Vega's 200-plus-page spreadsheet line by line, striking dozens of entries that it found were plainly insufficient before reducing the total fee request by 5%. Moreover, the district court found, "[f]or the most part," Simmons-Gill's "billing narratives contain a level of detail that paying clients would be likely to find acceptable." Cf.

*Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) ("[H]ours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute."). The misgivings the Park District identifies are neither in tension with the district court's analysis nor a basis upon which to hold that it improperly shifted Vega's burden. Furthermore, the district court's analysis is consistent with what our cases require. We have held that "[o]nce a petitioning party provides evidence of the proposed fees' reasonableness, the burden shifts to the other party to demonstrate the award's unreasonableness." *Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 759 (7th Cir. 2012). So the district court's statement in the November 16 order mentioned above accurately represents the back-and-forth of the parties' burdens in attorneys' fee litigation.

2

The Park District next broadly contends that the district court improperly awarded Vega fees for unsuccessful claims. When a plaintiff prevails on some claims, but not others, *Hensley* provides a two-step analysis for determining the reasonableness of a fee award: (1) "we ask, 'did the plaintiff prevail on claims that were unrelated to the claims on which [her] succeeded?'"; and (2) "we ask whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1172 (7th Cir. 2019) (quoting *Hensley*, 461 U.S. at 434) (alteration in original). The Park District's challenge focuses only on the first of the two steps.

A district court should not award attorneys' fees for work on an unsuccessful claim "that is distinct in all respects from [the plaintiff's] successful claim." *Hensley*, 461 U.S. at 440. But if the "lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* We have explained that unrelated claims are those that "are entirely distinct and separate from the prevailing claims." *Ibrahim*, 912 F.3d at 1174 (quotation omitted). Related claims, in contrast, "involve a common core of facts *or* are based on related legal theories;" there is no requirement that "*both* facts *and* law" be in common. *Id.* (quotation omitted). Stated differently, the relatedness analysis centers on "whether the unsuccessful and successful claims arose out of the same course of conduct. If they didn't, they are unrelated under *Hensley*." *Id.* (quotation omitted).

We are not convinced by the Park District's arguments that the district court misapplied *Hensley's* relatedness standard. As a preliminary matter, the court found that Simmons-Gill voluntarily eliminated time entries that concerned "*only* [] claims on which [Vega] did not prevail." It then considered whether her unsuccessful claims "had a common core of facts or a factual nexus with the claim on which she prevailed," and agreed that it did. That conclusion was reasonable. The court explained that Vega's "unsuccessful claims and her successful [Title VII] national-origin discrimination claim were all bound up together in the same essential course of events consisting of the investigation of [Vega's] timesheets and her ultimate termination[,]" that "all of the relevant events occurred in a very short period of time[,]" and that "evidence on the unsuccessful claims may have provided context for the jury regarding [Vega's] entire experience as one of the [Park

District's] employees." And at oral argument Vega maintained that she presented the same evidence for both her Title VII and her § 1983 claims at trial. When presented an opportunity to contradict that representation, the Park District demurred.

To be sure, we have recognized that some cases might present retaliation and discrimination claims that are "so discrete that a plaintiff who succeeds on only one claim would merit only a drastically reduced fee award." *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 584 (7th Cir. 1996). But, as discussed, the district court reasonably concluded that Vega's claims were not so discrete. So "we defer, as we must, to the judgment of the trier of fact." *Id.*

We also reject the Park District's overly simple argument concerning Vega's unsuccessful cross-appeal of her § 1983 retaliation claim. In essence, the Park District suggests that because the district court held that Vega's § 1983 cross-appeal was unrelated to Vega's successful claim, it follows that Vega's § 1983 claim, in general, was unrelated to her successful claim. But here, too, the district court's approach was reasonable. As a preliminary matter, Vega represented at oral argument that she voluntarily eliminated entries from her fee petition concerning her cross-appeal. And in the November 16 order, the district court agreed with the Park District that 20 hours of work on the cross-appeal it identified in Vega's supplemental fee petition should not be considered. But the district court rejected the Park District's argument that other time entries were attributable to her cross-appeal, reasoning that the Park District failed to identify the entries to which it objected. That approach was reasonable. *Wachovia Secs., LLC*, 674 F.3d at 759. Moreover, the district court reasonably

concluded that Simmons-Gill's work on the § 1983 cross-appeal—that Vega lost—did not contribute to Vega's overall success; in contrast, gathering and presenting evidence for Vega's § 1983 claim at trial directly contributed to it.

3

The Park District then asserts that the district court unreasonably awarded attorneys' fees for excessive billable hours. The Court in *Hensley* held that parties submitting fee requests "should make a good faith effort to exclude … hours that are excessive, redundant, or otherwise unnecessary just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." 461 U.S. at 434. This principle follows from counsel's obligation to exercise "billing judgment," which in part requires that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (quotation omitted). Accordingly, counsel must "winnow[] the hours actually expended to the hours reasonably expended." *Spegon*, 175 F.3d at 552. The district court, in turn, must exclude "hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (quotation omitted).

That said, the "essential goal in shifting fees … is to do rough justice, not achieve auditing perfection." *Fox*, 563 U.S. at 838. To that end, the Court has noted that district courts may consider "their overall sense of the suit" and "may use estimates in calculating and allocating an attorney's time." *Id.* And, along the same lines, we do not require a district court to "undertake a line-by-line inquiry" of a voluminous fee petition and have "endorse[d] the [district] court's lump-sum approach as a practical means of trimming fat from a fee

application." *Nichols*, 4 F.4th at 444 (quoting *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1984) (alteration omitted)).

The district court reasonably accounted for what it deemed excessive billing requests in both the July 20 and November 16 orders. In its July 20 order, the district court analyzed Simmons-Gill's fee petition line by line and excluded plainly deficient entries after Simmons-Gill had already voluntarily eliminated certain entries. It then reduced the total amount of fees Simmons-Gill sought by 5%. The court reasoned that for the most part the billing entries would be acceptable to paying clients; that the Park District's tactics accounted in part for the higher billable hours Simmons-Gill recorded; and that Simmons-Gill billed many of those hours at the lower billing rates of associates or paralegals. In the November 16 order, the district court noted that Vega submitted affidavits from employment law practitioners supporting the reasonableness of Simmons-Gill's billable hours. It went on to note the multitude of issues and high stakes in the litigation and that Vega's level of success at trial warranted "a substantial level of effort to protect the verdict." And it found the Park District offered no basis for its argument otherwise "apart from its own ipse dixit." See *Wachovia Secs., LLC*, 674 F.3d at 759.

In resisting the district court's analysis, the Park District argues that the district court arbitrarily eliminated certain redacted entries while leaving others. We disagree. As a preliminary matter, the district court did not turn a blind eye to the redacted entries; rather, it first eliminated entries that it found to be plainly deficient and then reduced the total fee request by 5%, explaining the reasons for the reduction. That analysis, as we discussed, was reasonable. So even if certain entries

were as deficient as those the district court specifically excluded, the district court accounted for that deficiency in a way we have recognized is reasonable. Given the highly deferential standard of review, the district court's analyses in its July 16 and November 20 orders were reasonable.

4

The Park District also takes issue with the district court's decision to use Simmons-Gill's current, rather than historical, billing rates. "A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). The "best evidence" of that rate "is the amount the attorney … bills for similar work." *Id.* The district court may also "rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id.* Vega has the burden of proving the market rate; "however, once the attorney provides evidence of the market rate, the burden shifts to the opposing party to show why a lower rate should be awarded." *Stark v. PPM Am. Inc.*, 354 F.3d 666, 675 (7th Cir. 2004). The district court's "hourly rate determinations" are "afforded great deference so long as" the evidence the district court relies upon is "sufficiently recent to be probative of counsel's" market rates. *Spegon*, 175 F.3d at 557. We have affirmed district courts' use of counsel's historical market rates, see *Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994), and current market rates in multi-year litigation. See *Lightfoot v. Walker*, 826 F.2d 516, 523 (7th Cir. 1987). As for the latter, a current market rate calculation "compensate[s] for the delay in payment" and "simplif[ies]" the district court's calculation. *Id.*

Although we are skeptical of using current billing rates in litigation that lasts as long as this case did, we cannot say that the district court's decision to use Simmons-Gill's current billing rates under the circumstances was unreasonable given the degree of deference we afford district courts. It was certainly reasonable for the district court to rely upon Vega's submissions—declarations from employment attorneys, an unexecuted hourly fee agreement, and Simmons-Gill's agreements to serve as an expert witness—to determine Simmons-Gill's current billing rates. See *Spegon*, 175 F.3d at 557. We also agree with the district court that using counsel's current billing rates has the virtue of simplicity and that it is appropriate for courts to account for a delay in payment. But, as we cautioned in *Lightfoot*, district courts should avoid awarding current billing rates when it results in a "windfall[,]" particularly in years-long litigation. 826 F.2d at 523. This litigation was exceptionally long, even for multi-year Title VII litigation. And applying the current billing rates without adjustment gives us pause—the applied rate is over 40% higher than Simmons-Gill's billing rate when the litigation commenced. The district court could have gone about this another way by using the historical billing rates at the time the work was performed plus compensating for the delay in payment, and could have provided a more robust explanation for its decision to apply current rates when the billings stretched over so many years. But, in the end, we are not convinced that the district court's approach under the circumstances in this case—using current billing rates as a means to compensate for the delay in

payment—was unreasonable under our highly deferential abuse of discretion standard.[3]

*       *       *

We end our analysis of the district court's attorneys' fees award where we started, with the standard of review in fee litigation appeals. The attorneys' fees in this case strike us as rather high for the type of litigation and monetary and equitable relief that Vega achieved. But our review is highly deferential, and the district court's analysis and reasoning demonstrate an appropriate exercise of its discretion.

B

The Park District finally takes issue with the district court's calculation of the tax-component award. We review a district court's grant of a tax-component award for abuse of discretion. *Vega*, 954 F.3d at 1009–10.

The district court used the same three-step formula that the district court in *Washington* used to calculate the award:

> (1) subtract[] the plaintiff's actual tax burden during the back-pay period from the tax burden she would have born during the same period had she remained employed by the defendant, (2) subtract[] the plaintiff's expected tax burden in the year of the decision, absent any lump-sum back-pay award, from that portion of her expected tax burden attributable to the back-pay award in the event that a lump-sum payment

---

[3] We note that the district court may have reduced the lodestar (that is, reasonable fees multiplied by reasonable hours) by 5% across the board to, at least in part, reduce Simmons-Gill's billing rate, but it did not say so.

> was made in the same year, and (3) subtract[]
> the result of (1) from the result of (2).

See *Washington*, 2016 WL 5233563, at *4. Following these steps in detail, the district court arrived at a $49,224.30 tax-component award.

The Park District does not object to the *Washington* framework.[4] Rather, it maintains that the district court abused its discretion for two reasons: (1) portions of Vega's tax returns from 2013 to 2017 were redacted—Vega's adjusted gross income, deductions, and taxable income—which made it impossible for the district court to accurately calculate Vega's hypothetical tax liability had she remained employed with the Park District for those years; and (2) the district court erred when it included the $300,000 compensatory damages award to calculate Vega's effective tax rate.

Both arguments fall flat. As for the first, Vega presented evidence of her actual tax burden ($0) for each year from 2013 to 2017 and testified to what she would have owed in taxes if employed by the Park District during that period. That testimony was based on Vega's actual tax burden while employed with the Park District from 2010 to 2012. So the district court reasonably credited this evidence. Indeed, the Park District presented nothing to contradict it, even though the Park District—as her former employer—could have deduced a hypothetical tax liability based on what *it* would have paid Vega. Because the district court had ample, uncontradicted evidence to employ the *Washington* methodology, it did not abuse its discretion when doing so. Moreover, the Park

---

[4] We do not go so far as to hold that *Washington* provides the exclusive formula for calculating a tax-component award.

District does not identify, and our research does not reveal, a case requiring certain information (here, unredacted tax returns) to calculate hypothetical tax liability. We do not impose such a requirement now.

The Park District's second argument asks us to hold, as a matter of law, that including compensatory damages to calculate Vega's effective tax rate was error, but we see no reason to impose that requirement either. No other circuit has placed such a limit on the district court's wide discretion to make a plaintiff whole through a tax-component award. Rightly so. Title VII affords wide latitude to fashion an award that fits the "circumstances peculiar to the case"—in other words, the plaintiff's circumstances. *E.E.O.C. v. N. Star. Hosp.*, 777 F.3d 898, 904 (7th Cir. 2015) (quotation omitted); see also 42 U.S.C. § 2000e–5(g)(1) (stating a court may award, among other things, "any other equitable relief as the court deems appropriate"). And while some district courts have considered compensatory damages when calculating a plaintiff's hypothetical tax liability in exercising their discretion, others have not. In sum, the Park District does not articulate any sufficient basis—statutory or otherwise—upon which to limit a district court's wide discretion in computing tax-component awards.

AFFIRMED